O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETH MAM,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF FULLERTON, *et al.*,<br><br>　　　　Defendants. | CASE NO. 8:11-cv-1242-JST (MLGx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OFFICER KENTON HAMPTON'S MOTION FOR SUMMARY JUDGMENT (Doc. 72)** |

Before the Court is Motion for Summary Judgment, or in the Alternative, Summary Adjudication of Issues ("Motion") filed by Defendant Officer Kenton Hampton. (Mot., Doc. 72.) Plaintiff Veth Mam filed an opposition, and Defendant replied. (Opp'n, Doc. 171; Reply, Doc. 194.) Having reviewed the papers and considered the arguments of counsel at the hearing, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

## I. Background

This case for violation of civil rights pursuant to 42 U.S.C. §1983 arises out of Mam's arrest and subsequent prosecution. After patronizing various bars, Mam and his friends exited Ziing's Night Club in Fullerton, California, at approximately 2:00 a.m. on October 23, 2010. (Def.'s Statement of Uncontroverted Facts ("SUF") ¶¶ 1-3, Doc. 72-1.)

Meanwhile, Fullerton Police Department Officer Jonathan Miller was sitting in his patrol car near Ziing's in a parking lot adjacent to West Amerige Avenue. (SUF ¶ 4.) Miller noticed two males engaged in a verbal argument, and he began driving his patrol car towards the individuals. (SUF ¶¶ 4-5.) While en route, Miller made contact with Sokha Leng while Leng's car was stopped. (*See* SUF ¶¶ 6,7.) At some point, Leng got out of his car and began interacting with Miller. (*See* Pl.'s Ex. 17 (Khorn Leng Decl.) ¶ 7), Doc. 170-14.) Miller could smell alcohol on Leng's breath. (SUF ¶ 7.)

The parties dispute the genesis of the altercation between Miller and Leng (and whether Leng struck Miller with his fist), but—in any event—Miller grabbed Leng and the two began to physically scuffle. (SUF ¶¶ 8-9; Pl.'s Resp. Def.'s Statement of Uncontroverted Facts ("SGI") ¶ 9, Doc. 172.)

The altercation drew the attention of a crowd of bar patrons. (SUF ¶ 14.) Several Fullerton Police Department ("FPD") officers were called to assist, (SUF

¶ 15), and at some point, Defendants Officer Frank Nguyen and Officer Kenton Hampton arrived on the scene. (SUF ¶¶ 24, 32.) When Hampton arrived on the scene, he was concerned that the "crowd" of approximately five to seven people "could possibly interfere" with Miller's arrest of Sokha Leng. (SGI ¶¶ 116-117.)

Officer Nguyen removed someone from Miller's back and pushed that suspect aside. (SGI ¶ 20.)

In an effort to record the struggle between Miller and Leng, Mam moved in close to the scuffle and began videotaping the incident on his cell phone. (SUF ¶ 12.) Nguyen instructed Mam twice to "back off." (SUF ¶ 24.) He then instructed Mam to "back up" a few more times. (SGI ¶¶ 28, 30, 31, 34, 35, 37; Ex. A1 ("Mam Video") at 0:57-1:06, Doc. 72-5.)

Hampton then pointed his finger at Mam and other crowd members and twice ordered them to "get back." (SGI ¶¶ 41, 43.) The parties dispute whether Mam was too close to Miller, and whether he (Mam) kept advancing after Officer Hampton's instructions to back up. (*See* SGI ¶¶ 18, 21, 23, 26, 27, 33, 36, 38.) However, Mam does not argue that he in fact complied with the orders to move back. Hampton then pushed a crowd member back and grabbed at Mam. (Mam Video at 0:57-1:06.) Hampton seized Mam by the arm and in the process knocked the cell phone out of Mam's hands—whether this was intentional or unintentional is in dispute. Hampton then led Mam to the police car, took him down with a "leg sweep," and handcuffed him. (Mam Video at 1:00-1:30; SUF ¶ 47; SGI ¶ 47.) After the phone was knocked out of Mam's hands, Densery Tim—a friend of Mam—picked up the cell phone and resumed recording the incident. (SUF ¶ 55.)

Hampton left Mam in handcuffs, face down on the ground, for about three to five minutes while he assisted his fellow officers with crowd control. (SUF ¶ 64.) Eventually, one or more of the officers was able to subdue, and arrest, Leng. (SUF ¶ 65.)

3

Hampton did not prepare or submit a police report concerning his detention of Mam for violating California Penal Code section 148(a).[1] (SUF ¶ 70.) Hampton later testified in deposition that Nguyen had informed him (Hampton) at the scene that Mam may have been involved in an attack on Officer Miller; however, Nguyen testified at deposition that he did *not* identify Mam at the scene, nor had he indicated to anyone, while at the scene, that Mam had been involved in an attack on Miller. (*Compare* SUF ¶ 68 *with* SGI ¶ 68.)

After Mam was handcuffed, he was placed in the back of a police vehicle and eventually transported to Fullerton jail by Officer Ricardo Reynoso and Corporal Daniel Solorio. (SUF ¶ 73.) Based on information he received from Nguyen, Sergeant Diaz told Reynoso to book Mam for violating Penal Code sections 148(a) (resisting, delaying, or obstructing an officer), 241(c) (assault against a peace officer), 243(b) (battery against a peace officer), and 405a (lynching).[2] (SUF ¶ 74.)

After being transferred to the county jail, where he was booked and processed, Mam was released from custody on Sunday, October 24, 2010. (SUF ¶ 75.) On November 17, 2010, the Orange County District Attorney ("OCDA") filed a criminal Complaint against Mam and Sokha Leng, charging them both with violating Penal Code sections 241(c), 243(b), and 148(a). (SUF ¶ 76.) Mam and Leng were jointly tried before a jury in July 2011. (SUF ¶ 77.) The jury acquitted Mam of all three charges, while it convicted Leng of all three charges. (SUF ¶¶ 84-85.)

---

[1] All further references to the "Penal Code" are to the California Penal Code.
[2] "The taking by means of a riot of any person from the lawful custody of any peace officer is a lynching." Cal. Penal Code § 405a.

4

1   Based on the foregoing, Mam filed a Complaint in this Court on August 19,
2   2011, asserting the following claims against Officer Hampton: violation of 42
3   U.S.C. § 1983 (excessive force, false arrest, malicious prosecution, and
4   conspiracy); violation of 42 U.S.C. § 1985(2); violation of 42 U.S.C. 1985(3); and
5   violation of 42 U.S.C. § 1986.  (Compl., Doc. 1.)  On February 13, 2012, the
6   Court granted in part Hampton's motion to dismiss, dismissing all but the § 1983
7   claim.  (*See* Order at 11-12, Doc. 36.)  Hampton now moves for summary
8   judgment on the § 1983 claim.  (*See* Mot.)

## II.   Legal Standard

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to particular materials in the record or showing that the materials cited do not establish that absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Reference to the record may include citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P.

56(c)(1)(A). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Id.*

### III. Discussion

Officer Hampton moves for summary judgment on Mam's § 1983 claim, under all theories—false arrest, First Amendment retaliation, excessive force, and conspiracy.[3] (*See* Mot.) The Court reviews the theories in turn.

#### A. False Arrest

Mam's first theory of recovery under § 1983 is false arrest; he contends that Hampton lacked probable cause to arrest him. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Moreover, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, Hampton has shown that there is no dispute as to any material facts concerning probable cause for Mam's arrest—such probable cause existed.[4] Penal Code section 148 provides:

> Every person who willfully resists, delays, or obstructs any public officer [or] peace officer . . . in the discharge or attempt to discharge

---

[3] Plaintiff's counsel made clear at the hearing that Mam was not asserting a claim for malicious prosecution against Hampton.

[4] At the hearing, Hampton's counsel conceded that—for purposes of this Motion—there is no relevant distinction between referring to Hampton's seizure of Mam as a "detention" or "arrest."

> any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Penal Code § 148(a)(1).

"Under California Penal Code § 148(a)(1), '[t]he legal elements of a violation . . . are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.'" *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (quoting *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (2002) (citations omitted)).

The public does have a First Amendment right to criticize the police—including using profanities and obscene gestures—without getting arrested for such conduct. *See, e.g.*, *City of Houston v. Hill*, 482 U.S. 451 (1987); *Duran v. City of Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1989). Thus, the Ninth Circuit has held that "verbal protests [can] not support an arrest under § 148." *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995). However, "a person [may not] avoid arrest or conviction for *the conduct* of refusing to comply with a police order to move back during an arrest." *Sorgen v. City and Cnty. of San Francisco*, No. C 05-03172 THE, 2006 WL 2583683, at *5 (N.D. Cal. Sept. 7, 2006). *See U.S. v. Poocha*, 259 F.3d 1077, 1082-83 (9th Cir. 2001) (bystander could not be convicted for yelling obscenities at law enforcement but could be convicted of defying order to leave scene of arrest).

The police have a right to secure the vicinity around an arrest they are effecting. Thus, refusing to move back pursuant to an order of a peace officer is a violation of Penal Code section 148(a)(1). *In re Muhammed C.* is instructive on this point. The defendant, a juvenile, was convicted for violating Penal Code

section 148. In that case police officers had arrested Richard Robinson on drug charges and placed him in the back of a squad car. *In re Muhammed C.*, 95 Cal. App. 4th at 1328. The back window of the squad car was partially down, and the juvenile "approached the back of the patrol car and spoke to Robinson." *Id.* One of the officers ordered the defendant to move away, and then the other officer did as well. At that point, the juvenile raised his hand toward the officers. *Id.* The officers then ordered him to get away from the car again. *Id.* Finally, they arrested him. *Id.* The panel of the California court of appeal affirmed the conviction: "Here a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car . . . ." *Id.* at 1330. In short, refusing to back away from an arrestee after the police have ordered one to do so is a violation of Penal Code section 148.

The Mam Video clearly shows that Mam was very close[5] to the arrest of Sokha Leng, and that Officer Nguyen ordered him (and presumably others) to "get back" multiple times.[6] Officer Hampton then issued two more orders to "get back" before seizing Mam. Mam's reliance on *People v. Quiroga*, 16 Cal. App. 4th 961 (1993)—for the proposition that the mere failure to respond to an officer's command with "alacrity" is not a violation of section 148—is misplaced. Mam ignored multiple orders to get back, and he never complied. His arrest is therefore not actionable under § 1983 because probable cause existed to arrest him for

---

[5] It is undisputed that Mam's cell phone did not have "the capability to zoom while videotaping." (SUF ¶ 13.)

[6] The Court can rely on the indisputable portions of the videos the parties submitted as evidence. *See Briley v. City of Hermosa Beach*, No. CV 05-8127 AG (SHx), 2008 WL 4443895, at *1 (C.D. Cal. Sept. 29, 2008) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") (alteration in original).

violating Penal Code section 148(a)(1) based on his refusal to withdraw from the immediate vicinity of the arrest. *See Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) ("Young was not arrested for protesting prior to complying with Deputy Wells's order to reenter his truck, but for failing altogether to comply with the order."); *Sorgen v. City and Cnty. of San Francisco*, No. C 05-03172 TEH, 2006 WL 2583683, at *5 (N.D. Cal. Sept. 7, 2006) (holding that *Quiroga*'s "slow to reply" doctrine does not apply in case where plaintiff never complied).

Even assuming, *arguendo*, that Hampton's arrest of Mam lacked probable cause, Hampton would be entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, --- U.S. ----, 131 S. Ct. 2074, 2080 (2011). This Court has discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted). This is an immunity from suit, not liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In this case, the second prong calls for the Court to determine "whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002) (internal citations and quotation marks omitted). In light of the perimeter the officers were trying to maintain around the arrest of Leng, a reasonable officer could have believed that probable cause existed to arrest Mam for refusing get back after repeated orders to that effect.

The Motion is GRANTED as to this theory of Mam's § 1983 claim.

### B. First Amendment Retaliation

Mam next asserts that he was retaliated against for exercising his First Amendment right to film the acts of the police in public—namely the Leng arrest. (*See* Opp'n at 3-4.) Both parties acknowledge that, in general, individuals do enjoy a First Amendment right to film matters of public interest. *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *see also Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (holding that the First Amendment protects the right of people to "videotape police carrying out their duties in public"). Mam argues that he was arrested in retaliation for filming Leng's arrest on his cell phone.

"In this Circuit, an individual has a right 'to be free from police action motivated by retaliatory animus but for which there was probable cause.'" *Ford v. City of Yakima*, --- F.3d ----, 11-35319, 2013 WL 485233, at *4 (9th Cir. Feb. 8, 2013) (quoting *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006)). "In order to establish a claim of retaliation in violation of the First Amendment, [Mam's] evidence must demonstrate that [Hampton's] conduct would chill a person of ordinary firmness from future First Amendment activity. *See Skoog*, 469 F.3d at 1231-32. In addition, the evidence must enable [Mam] ultimately to prove that the [Hampton's] desire to chill his speech was a but-for cause of [Hampton's] allegedly unlawful conduct." *Ford*, 2013 WL 485233, at *4 (citing *Lacey*, 693 F.3d at 916-17).

Mam's evidence is sufficient to meet the chilled-speech element because the Ninth Circuit has expressly held "that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford*, 2013 WL 485233, at *4.

The question is whether causation is met here. As explained above, the video indisputably reveals that Mam was ordered multiple times to get back

before he was ultimately arrested. (*See* Mam Video at 0:23-1:04.) Although Mam was not ordered by any FPD officer to put his camera away, or to turn off his camera, (SUF ¶¶ 52-53), the video clearly shows that Hampton seizes Mam, as opposed to any other person near Mam, and that only Mam audibly announces that he is recording the Leng struggle. Based on the record before the Court, the only difference between Mam and those near him was the cell phone being used to record. Moreover, the manner in which Mam was forced to the ground by a leg sweep is also circumstantial evidence of some animus towards Mam. Thus, a rational trier of fact could conclude that Hampton's seizure of Mam, though supported by probable cause, was motivated by Mam's videotaping—a protected activity.

Hampton argues at length in his Motion that he is also entitled to qualified immunity on this claim in light of the Supreme Court's recent decision in *Reichle v. Howards*, --- U.S. ----, 132 S. Ct. 2088 (2012). However, the *Ford* decision makes it apparent that *Reichle* has not cast doubt on the Ninth Circuit's prior precedents holding that retaliatory arrests supported by probable cause are actionable under § 1983. *See Ford*, 2013 WL 485233, at *3.

The Motion is DENIED as to this theory of Mam's § 1983 claim.

### C. Excessive Force

Mam's next § 1983 theory is that Hampton exercised excessive force against him, in violation of his Fourth Amendment rights. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc) ("A Fourth Amendment claim of excessive force is analyzed under the framework outlined by the Supreme Court in *Graham v. Connor* . . . .").

11

To determine whether a defendant's use of force was reasonable under the Fourth Amendment, courts must balance "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Moreover, the Ninth Circuit has held that courts may also consider "the availability of alternative methods of capturing or subduing a suspect" and an officer's failure to warn a person before using force. *Smith*, 394 F.3d at 701, 703 ("In some cases . . . the availability of alternative methods of capturing or subduing a suspect may be a factor to consider."); *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2009) (holding that courts may consider failure to warn, as well as "other tactics if any were available to effect the arrest").

The "reasonableness inquiry in an excessive force case is an objective one" and courts will attempt to determine whether the "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Smith*, 394 F.3d at 701 (internal quotation marks omitted). "A simple statement by an officer that he fears for his safety or the safety [of] others is not enough; there must be objective factors to justify such a concern." *Bryan*, 630 F.3d at 826 (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001)). An officer's unreasonable factual mistake can lead to a Fourth Amendment violation. *See Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011) (reversing summary judgment because officer's mistake of fact was unreasonable).

12

The Court cannot conclude that the force Hampton applied in taking Mam down with a leg sweep and handcuffing him on the ground was objectively reasonable. (*See* Mam Video at 0:58 – 1:10; Pl.'s Ex. 15 at 0:19-0:29, Doc. 177.)

Hampton points out that Mam was never struck with an object, tased, or sprayed with pepper spray, (SUF ¶¶ 61-63), and that Mam never sought medical attention for any physical injuries he may have suffered as a result of the incident. (SUF ¶ 86.) However, none of this is dispositive: Hampton has provided no authority for the proposition that physical injury necessitating medical treatment is a prerequisite to a claim for excessive force.

The factors the Ninth Circuit has identified also militate against granting summary judgment on this claim. First, the severity of the crime at issue weighs against the need to drop a suspect to the ground. Second, while Hampton may have reasonably believed that Mam (or any other member of the crowd) may have posed a threat to Miller, he led Mam away from the crowd, so there is no evidence before the Court that demonstrates that Hampton could not have at least attempted to peacefully handcuff Mam, on the ground or while standing. On the video, Mam is not seen resisting or avoiding arrest in any way. And again, there may have been another way to handcuff Mam, especially after Mam was led from the crowd.

The Motion is DENIED as to this theory of Mam's § 1983 claim.

### D. Conspiracy to Violate Civil Rights

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal citations and quotation marks omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* "However, the evidence adduced must

demonstrate more than the mere fact that two people did or said the same thing; the evidence must actually point to an agreement." *Myers v. City of Hermosa Beach*, 299 F. App'x 744, 747 (9th Cir. 2008) (citing *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Ting v. United States*, 927 F.2d 1504, 1512-13 (9th Cir. 1991)).

Hampton has met his initial burden of demonstrating the absence of a material fact as to Mam's conspiracy claim by pointing to the lack of evidence that Hampton conspired with any of his fellow officers. (*See* Mot. at 16-17.) As explained above, the burden thus shifts to Mam.

In support of his conspiracy claim, Mam contends that "Hampton and the other Officer Defendants submitted false police reports to obscure Hampton's actions and justify Plaintiff's arrest," (Opp'n at 12), relying on the undisputed fact that Hampton's police report does not discuss the Mam incident. (SUG ¶ 69; SGI ¶ 69.) This evidence alone—the silence of Hampton's report on the Mam incident—is insufficient evidence from which a reasonable jury could infer a tacit agreement between Hampton and his fellow officers.

Mam also points to Nguyen's deposition testimony that he told Reynoso (because Reynoso was doing the booking) that Mam was the one who attacked Officer Miller. (*See* Opp'n at 11 (citing SGI ¶ 135).) Even if that is sufficient evidence of a meeting of the minds between Reynoso and Nguyen, it is not evidence of a conspiracy between *Hampton* and Nguyen. He further relies on alleged false testimony of Miller and Nguyen at Mam's trial, but again he has not brought forth circumstantial evidence of a tacit agreement between *Hampton* and any of the other officers.[7]

---

[7] Finally, he relies on assertion that Hampton "assaulted Plaintiff and arrested him without probable cause." (Opp'n at 12.) However, as explained above, Hampton had probable cause to arrest Mam.

14

When asked at the hearing what evidence Mam had of Hampton's involvement in a conspiracy, Mam's counsel replied that Hampton misled Deputy District Attorney Rebecca Reed in withholding from her the fact that he, not Nguyen, was the arresting officer. However, neither Plaintiff's Response to Defendant's Statement of Uncontroverted Facts nor his Opposition mentions this contention. (*See also* SGI ¶ 81 (not disputing Hampton's characterization that Hampton responded "honestly and truthfully" to Reed's questions about Hampton's involvement in the incident).)

Hampton's Motion is GRANTED as to this theory of Mam's § 1983 claim.

**IV.     Conclusion**

For the reasons set forth above the Court GRANTS Defendant's Motion as to the false arrest, malicious prosecution and conspiracy theories, but DENIES Defendant's Motion as to the First Amendment retaliation and excessive force theories.

DATED: March 12, 2013

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE

15