O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VETH MAM,

        Plaintiff,

  vs.

CITY OF FULLERTON, *et al.*,

      Defendants.

CASE NO. 8:11-cv-1242-JST (MLGx)

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

Before the Court is Plaintiff Veth Mam's Renewed Motion for Judgment as a Matter of Law or in the Alternative, Motion for New Trial.  (Mot., Doc. 323.)  Defendants opposed, and Plaintiff replied.  (Hampton Opp'n, Doc. 324; Miller Opp'n, Doc. 325; Reply, Doc. 326.)  The Court finds this matter appropriate for disposition without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Accordingly, the hearing set for July 12, 2013, at 2:30 p.m. is VACATED.  For the following reasons, the Court DENIES Plaintiff's Motion.

## I.    Background

Plaintiff Veth Mam brought this action for violation of civil rights against the City of Fullerton and various officers of the Fullerton Police Department. After the Court ruled on motions for summary judgment, Mam proceeded to trial on three of his claims: (1) First Amendment retaliation against Officer Kenton Hampton; (2) excessive force against Officer Hampton; and (3) malicious prosecution against Officers Frank Nguyen and Jonathan Miller.  After an eight-day trial, the jury found in favor of the defendants on all of Mam's claims.  (*See* Docs. 309 & 313.)

Mam now moves for judgment as a matter of law on the three claims tried to a jury, or, alternatively, a new trial.

## II.    Renewed Motion for Judgment as a Matter of Law

### A.  Legal Standard

Rule 50(a) of the Federal Rules of Civil Procedure allows a court to enter judgment against a party as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party" as to an issue on which that party has been fully heard during trial.  Fed. R. Civ. P. 50(a), (b).  However, the jury's verdict must be upheld if, viewing the facts in the light most favorable

1    to the non-moving party, there is sufficient evidence for a reasonable jury to have

2    found in the non-moving party's favor. *Johnson v. Paradise Valley Unified Sch.*

3    *Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). A party seeking judgment as a matter

4    of law has a "very high" standard to meet. *Costa v. Desert Palace*, 299 F.3d 838,

5    859 (9th Cir. 2002). The Ninth Circuit has held that parties seeking judgment as a

6    matter of law must meet this high burden because courts generally should not

7    impinge upon the province of the jury. *See id.* ("This high hurdle recognizes that

8    credibility, inferences, and fact finding are the province of the jury, not this

9    court.")

10        In ruling on a motion for judgment as a matter of law (JMOL), the Court

11    may not make credibility determinations or weigh the evidence, and should view

12    all inferences in the light most favorable to the non-moving party. *Reeves v.*

13    *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000). The court "may

14    not substitute its view of the evidence for that of the jury." *Johnson*, 251 F.3d at

15    1227. A district court may not grant a JMOL unless "the evidence is such that,

16    without weighing the credibility of the witnesses or otherwise considering the

17    weight of the evidence, there can be but one conclusion as to the verdict that

18    reasonable persons could have reached." *Yurman Design, Inc. v. PAJ Inc.*, 262

19    F.3d 101, 108 (2d Cir. 2001).

20        **B. Analysis**

21        Mam argues that the great weight of evidence was against the jury verdict

22    as to all three claims. (*See* Pl.'s Mem. P. & A. at 1, Doc. 323.) Accordingly, the

23    Court reviews the claims in order.

24        **1.      First Amendment Retaliation**

25        Mam argues that he presented substantial evidence that Officer Hampton

26    arrested him in retaliation for his speech (both what he said and his conduct in

27    recording the events that night). He also argues that Hampton offered only his

28

testimony that he did not see Mam's camera and that he was not singling out Mam.  The First Amendment retaliation claim has three elements:

> (1) The plaintiff engaged in videotaping police activity protected under the First Amendment;
> (2) The defendant took action against the plaintiff; and
> (3) The plaintiff's protected speech and conduct was a *substantial or motivating factor for the defendant's action*."

(Pl.'s Mem. P. & A. at 2 (quoting jury instruction (emphasis added); *see also* Jury Instruction # 24, Doc. 310.)

The third element is intent.  Officer Hampton provided direct evidence (*i.e.*, his testimony) that he did *not* take action against Mam because of Mam's speech.  The jury apparently credited this testimony, and the Court may not revisit Officer Hampton's credibility.

Accordingly, this contention is without merit.

### 2.    Excessive Force

Sufficient evidence supported the jury's verdict on Mam's excessive force claim.  From the video, the jury could have concluded that Mam and his cohorts were dangerously close to the officers.  Indeed, the Court previously noted that Mam moved in "very close" to the arrest of Sokha Leng. *Mam v. City of Fullerton*, No. 8:11-cv-1242-JST (MLGx), 2013 U.S. Dist. LEXIS 34287, at *12 (C.D. Cal. Mar. 12, 2013).   Moreover, the video depicted officers instructing the crowd multiple times to "get back" before Officer Hampton arrived and further instructed the group to "get back."

Officer Hampton also testified that he led Mam, after seizing him, away from the crowd "because [he] thought that was the safe place to detain him and also for officer safety reasons."  (Opp'n Ex. A (Trial Tr.) at 108:18-109:8, Doc. 324-2.)  Officer Hampton further testified that he instructed Mam to get on the

1   ground, and that after he (Mam) did not comply, Officer Hampton then took him

2   to the ground.  (*Id.* at 110:2-13.)

3        This testimony, along with the other evidence admitted at trial, was

4   sufficient for the jury to find in favor of Officer Hampton on this claim.  Mam's

5   expert testimony to the contrary did not require the jury to find in his favor, and a

6   proverbial "battle of the experts" is not a ground for the Court to set aside a jury

7   verdict, as the jury was of course free to credit either expert's testimony.  *See*

8   *Apple, Inc. v. Samsung Electronics Co.*, --- F. Supp. 2d ----, No. 11-cv-01846-

9   LHK, 2013 WL 412859, at *13 (N.D. Cal. Jan. 29, 2013) (holding that the jury

10  was permitted to credit one party's expert over the other party's expert).

11                    **3.        Malicious Prosecution**

12       Lastly, sufficient evidence supported the jury's special findings on the

13  malicious prosecution claim.  Element four of the malicious prosecution jury

14  instruction provided: "That the officers acted primarily for a purpose other than to

15  bring the plaintiff to justice."  (Pl.'s Mem. P. & A. at 7 (quoting jury instruction).)

16  Again, this inquiry was largely one of credibility.  If the jury credited the

17  testimony of Officers Nguyen and Miller that they (Nguyen and Miller) believed

18  that it was Mam who jumped on Miller's back, then the jury had sufficient

19  evidence to find, as it did, in favor of the officers on this element of the

20  instruction.

21       The Court denied summary judgment on this claim, concluding: "A trier of

22  fact could determine that, when confronted with the physical impossibility of Mr.

23  Mam being both the person *taking* the video and the person *in* the video, Nguyen

24  and Miller deliberately testified falsely at Mam's criminal trial (and misled D.A.

25  Reed) to sustain the prosecution."  (Order at 13, Doc. 257.)  The jury could have

26  accepted that theory; it did not, and the jury had sufficient evidence to find in

27  favor of Officers Miller and Nguyen on this claim.  First, the officers testified as

28

                                      5

1  to their own subjective, good-faith belief that an individual had attempted to grab

2  or choke Miller and that Mam was that individual.  The officers also elicited

3  testimony that Mam never provided the police department with his video, so the

4  officers were not able to view it until right before trial.  The officers further

5  testified that they did not believe that Mam was the individual who was recording

6  the altercation.  In addition, the officers testified as to the chaotic nature of the

7  scene, in support of their contention that their mistake was reasonable.  Nguyen

8  testified that he was responding to Miller's "Code 3" call for help because Miller

9  was in a fight with Leng.  Miller testified at length about his struggle with Leng.

10 Defendants' expert, Curtis Cope, also testified as to the reasonableness of the

11 officers' identification of Mam under the particular circumstances the officers

12 faced that night.

13        In short, sufficient evidence supported the jury's findings in favor of the

14 officers on Mam's malicious-prosecution claim.

15

16 **III.    New Trial**

17            **A.  Legal Standard**

18        Under Federal Rule of Civil Procedure 59(a), a district court may grant a

19 new trial "after a jury trial, for any reason for which a new trial has heretofore

20 been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  The

21 Ninth Circuit has held that "[t]he trial court may grant a new trial only if the

22 verdict is contrary to the clear weight of the evidence, is based upon false or

23 perjurious evidence, or to prevent a miscarriage of justice."  *Molski v. M.J. Cable,*

24 *Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

25

26

27

28

B.  **Analysis.**

1.        **Verdict Against the Weight of the Evidence**

Mam first moves for a new trial on the ground that the jury verdict is against the weight of the evidence.  The Court disagrees.  This was not a case where the evidence was so lopsided that a new trial must be granted.  Credibility was a key issue in this case because of the nature of Mam's claims.  The Defendants introduced sufficient direct and indirect evidence in support of their case; indeed, the jury was presented with ample evidence from which they could find in favor of the defendants.

2.        **Instructional Error**

Instructional error is a basis for awarding a party a new trial.  *See, e.g.*, *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  Mam argues that the Court erred in instructing the jury, over his objection, that the Court had already determined that the officers had probable cause to arrest Mam.  Moreover, Mam argues that he was prejudiced because this instruction "stood out on its own" because it was alone on a page, while "the explanations for the interplay of the probable cause issues were buried in other substantive instructions."  (Pl.'s Mem. P. & A. at 14.)  Mam does not cite any authorities in support of these arguments.

The Court did not err in instructing the jury that it had already determined that probable cause supported Mam's arrest.  The Ninth Circuit rejected a similar challenge in *Mahoney v. Barlow*, 452 F. App'x 724, 726 (9th Cir. 2011): "The district court properly instructed the jury regarding its previous rulings on summary judgment.  The court clearly stated that the issue for the jury was whether the officers had used *excessive* force.  The court's statement that it had already determined that Defendants were entitled to use *reasonable* force did not mislead or unduly prejudice the jury."  The Court's instruction was an accurate

1  statement of the law and appropriately focused the jury's attention on the issue

2  before it—whether the force used was excessive.

3      Mam's second argument, that the probable-cause instruction "stood out on

4  its own," is meritless.  "The law presumes that jurors carefully follow the

5  instructions given to them," *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014,

6  1023 (9th Cir. 2000) (quoting *Wade v. Calderon*, 29 F.3d 1312, 1321 (9th Cir.

7  1994) (alteration omitted)), and the Court expressly instructed the jury against

8  singling out an instruction: "In following my instructions, you must follow all of

9  them *and not single out some and ignore others*; they are all important."  (Jury

10  Instruction 1, Doc. 310 (emphasis added).)

### 3.      Cross-examination of Officer Hampton

12      Mam next contends that the Court erred in prohibiting him from cross-

13  examining Officer Hampton regarding failed polygraphs, civil lawsuits to which

14  he was a party, failed law enforcement employment applications, discipline, and

15  various other prior "bad acts."  (*See* Docs. 176 & 288.)  The Court granted

16  Defendants' motions in limine to exclude this evidence as to the liability phase

17  only, subject to renewal during the damages phase.  (*See* Doc. 288.)

18      The Court did not err in precluding Mam from cross-examining Officer

19  Hampton regarding these instances.  Rule 608 of the Federal Rules of Evidence

20  provides that specific instances of conduct may be "inquired into" only if the

21  Court permits and the specific instances are "probative of the character for

22  truthfulness or untruthfulness" of the witness.  Fed. R. Evid. 608(b).

23      The fact that other agencies did not hire Officer Hampton, *per se*, is not

24  probative of truthfulness.  The polygraph evidence was not shown to be

25  sufficiently reliable such that the risk of misleading the jury or unfair prejudice

26  substantially outweighed its probative value, if it had any.  *See* Fed. R. Evid. 403.

27

28

1   The other instances Mam wanted to inquire into were also too remote in time or

2   were of little probative value.

3           **4.**        **Defense Counsel's Citation to U.S. Supreme Court**

4         Mam next argues that he is entitled to a new trial based on Officer

5   Hampton's counsel's remark, quoting or paraphrasing the Supreme Court, that not

6   every "push or shove" is a constitutional violation.  As Mam concedes, he did not

7   object to this statement in closing argument, so it is reviewed for plain error.

8         "A new trial should only be granted [on this ground] where the flavor of

9   misconduct . . . sufficiently permeate[s] an entire proceeding to provide

10  conviction that the jury was influenced by passion and prejudice in reaching its

11  verdict." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 516-17 (9th Cir. 2004)

12  (internal citation and quotation marks omitted) (second alteration in original).

13  "There is an even "high[er] threshold" for granting a new trial where, as here,

14  [Mam] failed to object to the alleged misconduct during trial." (*Id.* at 517

15  (quoting *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.,* 785 F.2d 656, 658

16  (9th Cir. 1986)) (first alteration in original).  "A higher threshold is necessary for

17  two reasons: First, raising an objection after the closing argument and before the

18  jury begins deliberations permit[s] the judge to examine the alleged prejudice and

19  to admonish . . . counsel or issue a curative instruction, if warranted." *Id.* (internal

20  citations and quotation marks omitted).  "Second, allowing a party to wait to raise

21  the error until after the negative verdict encourages that party to sit silent in the

22  face of claimed error." *Id.* (quotation marks omitted).  "Plain error review

23  requires: (1) an error; (2) that the error be plain or obvious; (3) that the error have

24  been prejudicial or affect substantial rights; and (4) that review be necessary to

25  prevent a miscarriage of justice." *Id.*

26        Mam has not met this high bar, nor does the Court conclude that the

27  statement during closing argument (assuming it was misconduct) "sufficiently

28

1 permeate[d]" the trial such that the jury "was influenced by passion or prejudice in

2 reaching its verdict." *Id.* Any error was not plain nor obvious, nor did it "affect

3 substantial rights." *Id.*

4           **5.**        **Defense Counsel's Reference of Boston Bombing**

5       Lastly, Mam argues that he is entitled to a new trial in light of defense

6 counsel's comment regarding the "Boston Bombers." As set forth above, a new

7 trial is available on this ground only "where the flavor of misconduct . . .

8 sufficiently permeate[d] [the] entire proceeding to provide conviction that the jury

9 was influenced by passion and prejudice in reaching its verdict." *Settlegoode*, 371

10 F.3d at 516-17.

11       The Court agrees that the comment was improper, but it does not require a

12 new trial. As Mam acknowledges, the Court gave a curative instruction at the

13 close of arguments, and in that instruction the Court made clear that the case had

14 nothing to do with tanks in Tiananmen Square (a comment made by Plaintiff's

15 counsel in closing) or bombs in Boston, Massachusetts—those issues were

16 irrelevant. Courts presume that juries follow curative instructions. *See Doe ex*

17 *rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000) ("[t]here is a

18 strong presumption that the curative instructions given by the district court were

19 followed by the jury"). Moreover, Mam did not ask for any additional relief after

20 the Court issued the curative instruction. Indeed, because the comment was so

21 irrelevant and unrelated to the issues in this case—unlike, perhaps, a case in which

22 there was some allegation of terrorist-type activity—the possibility of prejudice is

23 even more remote.

24       In any event, the comment, though improper, did not "sufficiently

25 permeate" the trial such that the Court is convinced "that the jury was influenced

26 by passion and prejudice in reaching its verdict." *Settlegoode*, 371 F.3d at 516-17.

27

28

1

**IV.     Conclusion**

2          For the foregoing reasons, the Court DENIES Plaintiff's Renewed Motion

3   for Judgment as a Matter of Law or in the Alternative, Motion for New Trial.

4

5

6   DATED: July 5, 2013

7

8                                        JOSEPHINE STATON TUCKER
                                        ─────────────────────────
9                                          JOSEPHINE STATON TUCKER
                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28